IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE ACOSTA, #Y12848, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-cv-02085-SMY |
| | ) |
| DR. MONTGOMERY, | ) |
| COUNSELOR GATES, | ) |
| and LATOYA HUGHES, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

Plaintiff Jose Acosta, an inmate in the custody of the Illinois Department of Corrections (IDOC) currently incarcerated at Big Muddy River Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations stemming from the denial of medical care for a stye on his left eye. (Doc. 1). He seeks money damages. *Id*. Plaintiff also requests a temporary restraining order (TRO) and/or a preliminary injunction.[1] *See* Doc. 9. This matter is subject to review under 28 U.S.C. § 1915A, which requires this Court to screen the Complaint and dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *Id*.

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 1-7): While housed at Big Muddy River Correctional Center (BMRCC) in August 2024, Plaintiff noticed a pimple forming on his left eye. The pimple oozed puss that entered his eye and caused "extreme

---

[1] Plaintiff filed a Motion for TRO and/or Preliminary Injunction (Doc. 2) on November 18, 2025 that was denied on November 21, 2025 (Doc. 4). He filed a Second Motion for TRO and/or Preliminary Injunction (Doc. 9) on December 23, 2025, which is addressed herein.

discomfort." *Id*. at 3. When he submitted a sick call request, Plaintiff was given ointment that failed to treat this condition or alleviate the pain. *Id*.

Plaintiff submitted a second sick call request and was diagnosed by the prison's eye doctor with a stye on his left eye. Dr. Montgomery prescribed antibiotics. Although Plaintiff completed the full course of antibiotics, the stye only increased in size. It began rubbing against his left eyeball, scratching it and causing pain with each blink. *Id*.

In response to his third sick call request, Dr. Montgomery examined his eye again. The doctor prescribed a different course of antibiotics. Plaintiff completed this round of treatment and noticed no improvement. *Id*. at 4. He informed the doctor that the stye was continuing to cause pain and to cause difficulty seeing.

On July 9, 2025, Dr. Montgomery prescribed the same antibiotics that already proved ineffective. Plaintiff completed this course of antibiotics and noticed no improvement. The pain, puss, and scratching sensation continued. *Id*.

Plaintiff met with Dr. Montgomery again on August 27, 2025. He explained that he had experienced no improvement in his condition for almost a year, and asked the doctor to consider surgical removal of the stye. Dr. Montgomery dismissed this request and ordered eye drops which he said would get rid of the stye. Plaintiff used the eye drops as prescribed but noticed no improvement. The stye hardened and produced more puss and pain. *Id*.

Plaintiff filed a grievance to address the issue on July 7, 2025, and Counselor Gates agreed to "look into it." *Id*. at 5. Plaintiff heard nothing for several months. He inquired into the status of the grievance on November 3, 2025. When he saw Counselor Gates on November 6, 2025, Plaintiff also asked the counselor directly about the status of his grievance. The counselor admitted throwing away the original grievance because it contained a grievance number and no content.

Plaintiff summarized the grievance for Counselor Gates, who responded, "I don't have anything to do with that." *Id*. Plaintiff again asked Counselor Gates about the status of his medical grievance on November 10, 2025. This time, Counselor Gates said the grievance was on the "officers (sic) desk." *Id*.

Plaintiff spoke with Grievance Officer Maulding[2] on November 14, 2025. The officer explained that he was the only grievance officer at BMRCC, and he had a stack of 3,500 grievances waiting for answers on his desk. He could only address 10-15 per day. Maulding estimated that Plaintiff would receive a response in 3 or 4 months. When Plaintiff asked why there were no additional grievance officers on staff, Maulding explained that BMRCC was supposed to employ 3 or more grievance officers, but IDOC Director Hughes had not posted the job openings or interviewed anyone to fill the open positions. *Id*. at 6. Realizing that the grievance process could provide him with no relief, Plaintiff filed this lawsuit the same week. *Id*.

### Discussion

Based on the allegations in the Complaint, the Court designates the following claims:

Count 1: Eighth Amendment deliberate indifference claim against Dr. Montgomery for denying Plaintiff adequate medical care for a painful stye on his left eye from August 2024 to November 2025.

Count 2: Eighth or Fourteenth Amendment claim against Counselor Gates for throwing away a grievance Plaintiff filed to complain about the denial of medical care for a stye on July 2025 and for failing to timely address subsequent grievances he filed about the same condition in November 2025.

Count 3: Eighth or Fourteenth Amendment claim against IDOC Director Hughes for failing to post or fill open positions for grievance officers at BMRCC.

Any other claim mentioned in the Complaint but not addressed herein is dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[2] Maulding is not named as a defendant, and Plaintiff asserts no claims against this individual.

**Count 1**

An Eighth Amendment claim for the denial of medical care consists of (1) an objectively serious medical need and (2) deliberate indifference to the medical need by each defendant. *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457-58 (7th Cir. 2020). An objectively serious medical need is one that has been diagnosed by a physician as requiring treatment or one where the need for treatment would be obvious to a lay person. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference occurs when a defendant knows about and disregards an excessive risk to inmate health. *Id*.

Plaintiff's allegations suggest Dr. Montgomery acted with deliberate indifference to Plaintiff's objectively serious medical need by failing to timely treat symptoms of pain, infection, irritation, and/or vision loss associated with a stye. Plaintiff alleges Dr. Montgomery persisted in a course of treatment with antibiotics and eye drops known to be ineffective even as the condition worsened from August 2024 through November 2025. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010) (citations omitted) (doctor's choice of "easier and less efficacious treatment" for a serious medical condition can amount to deliberate indifference in violation of Eighth Amendment, particularly where significant delay in treatment unnecessarily prolongs pain or exacerbates condition). Thus, Count 1 survives preliminary review against Dr. Montgomery.

However, Plaintiff does not state a viable claim against Counselor Gates for throwing away a grievance containing a grievance number and no content in July 2025 and explaining that a staffing shortage would result in a delayed response to one or more grievances filed in November 2025. The Fourteenth Amendment does not guarantee access to a grievance process. *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). At most, the counselor's conduct could constitute negligence, not deliberate indifference under the Eighth Amendment. *See Estate of*

*Miller v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017) ("[P]rison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies."). Count 2 will therefore be dismissed without prejudice for failure to state a claim against Counselor Gates.

### Count 3

The allegations do not indicate that IDOC Director Hughes participated in any decisions about Plaintiff's medical care. Her alleged failure to timely post open positions for grievance officers at BMRCC does not amount to a violation of Plaintiff's constitutional rights.

By all indications, Plaintiff names this defendant solely because of her supervisory role over the individual(s) who allegedly denied him timely medical care at BMRCC. However, because the doctrine of *respondeat superior* does not apply to actions brought under § 1983, supervisory liability does not attach to Hughes. *Kinslow v. Pollara*, 538 F.3d 687, 692 (7th Cir. 2008). Instead, liability under § 1983 requires that each defendant be personally involved in the alleged constitutional violation. *Matz v. Klotka*, 769 F.3d 517 (7th Cir. 2014). Count 3 will therefore be dismissed without prejudice for failure to state a claim against this defendant.

### Exhaustion of Administrative Remedies

Plaintiff admits that he filed this lawsuit before exhausting his remedies because the grievance process was allegedly unavailable to him. The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires a prisoner-plaintiff to exhaust all available administrative remedies *before* bringing suit in federal court. A plaintiff cannot file suit first and exhaust later. *Id*.

At this stage, Count 1 survives screening against Dr. Montgomery. Plaintiff's case is subject to dismissal, however, if it becomes clear that he failed to exhaust his available remedies before bringing suit. Dismissal for failure to exhaust is generally without prejudice, leaving a plaintiff free to exhaust his remedies and re-file his lawsuit after doing so, *if time allows*. Plaintiff

should be aware that the statute of limitations for his claim is two (2) years. Therefore, he runs the risk that his claim(s) will be time-barred, if the Court determines at a later stage of litigation that he failed to exhaust his available administrative remedies before bringing this action.

### Motion for TRO and/or Preliminary Injunction

Plaintiff claims he has submitted 5 sick call slips for treatment of headaches and nausea associated with the stye in his left eye since September 2025 and has not been seen by a nurse or doctor. He seeks a court order requiring treatment of his stye by Dr. Montgomery within 14 days. *Id*.

The Court may issue a TRO without notice to the party to be enjoined that may last no more than 14 days. *See* FED. R. CIV. P. 65(b)(2). Specific facts in an affidavit or a verified complaint must clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

The Court may issue a preliminary injunction only after the adverse party is given notice and an opportunity to oppose the motion. *See* FED. R. CIV. P. 65(a)(1). A plaintiff seeking a preliminary injunction must clearly show: (1) some likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (citation omitted).

Plaintiff has failed to clearly demonstrate that he is entitled to this relief. He relies on conclusory allegations of a connection between his symptoms (headaches and nausea not mentioned in the complaint covering the same time period) and his medical condition (stye on his

left eye).  He has not described their frequency, beyond stating that he has submitted 5 sick call requests since September 2025 (approximately 10-15 days apart).  He also describes no change in his condition (stye) or symptoms (headaches and nausea) since September 2025.  Moreover, he has not explained how additional treatment with Dr. Montgomery, who has allegedly failed to treat this condition or symptoms to date, will improve his situation.  Plaintiff also discloses no efforts to pursue emergency relief using the grievance process at BMRCC.  As such, Plaintiff's motion is **DENIED**.

## Disposition

The Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A, and **COUNT 1** will proceed against **DR. MONTGOMERY**, in an individual capacity.  However, **COUNT 2** against **COUNSELOR GATES** and **COUNT 3** against **LATOYA HUGHES** are **DISMISSED** without prejudice for failure to state a claim.

Plaintiff's Motion for TRO and/or Preliminary Injunction (Doc. 9) is **DENIED** without prejudice.

The Clerk shall prepare for **DR. MONTGOMERY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer

shall furnish the Clerk with that Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Under Administrative Order No. 244 and SDIL-LR 8.2, Defendant need only respond to the issues in this Order.**

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even if he is granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to TERMINATE COUNSELOR GATES and LATOYA HUGHES as defendants in CM/ECF and ENTER the Court's standard HIPAA-Qualified Protective Order.**

**IT IS SO ORDERED.**

DATED:   January 7, 2026          *s/ Staci M. Yandle*
                                  STACI M. YANDLE
                                  Chief U.S. District Judge

8

**<u>Notice to Plaintiff</u>**

Once identified, the Court will take the necessary steps to notify the Defendant of your lawsuit and serve him or her with a copy of your Complaint. After service has been achieved, Defendant will enter an appearance and answer your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Answer, but it is entirely possible that it will take **90 days** or more. When Defendant has answered, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendant before filing any motions, to give the Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's attorneys have filed appearances will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.